## Case No. 12,261.

### The SALLY MAGEE.

### The FOREST KING.

### The WINIFRED.

### The LYNCHBURG.

[Blatchf. Pr. Cas. 596.] [1]

District Court, S. D. New York. Jan., 1864.

PRIZE PROPERTY—COMPENSATION OF APPRAISER—
    TAXATION AS COSTS—CHARGES FOR BONDING
    —AMOUNT ALLOWED BY STATUTE.

1. An appraiser appointed by the court, on the application of the claimant, to appraise the prize property, with a view to its delivery on bail to the claimant, not having been paid his compensation, applied to the court to tax his

costs for the service, and direct them to be paid out of the proceeds of the property, but the application was denied.

2. The charges of appraising and bonding such property must be borne by the party who applies to have it bonded.

3. The appraiser having charged 1 per cent. on the value of the property appraised, and the prize commissioners having reported that one-half of that amount would be a proper compensation, held, that the appraiser had no right to demand a quantum meruit for his services, or any further reward than the per diem allowance provided by statute or the standing rules of the court for that description of services.

[In admiralty. See Cases Nos. 12,259 and 12,260.]

BETTS, District Judge. Proceedings were taken before the court, in the term of July, 1861, after the arrest and prosecution of the above vessels and portions of their cargoes in prize, to obtain, on the part of the claimants, an appraisal of the coffee laden on board each vessel, with a view to bonding the several vessels and the coffee seized with them.

In the case of the Sallie Magee and her cargo, it appears that the district attorney objected specifically to the allowance of the application made by the claimants to have the prize delivered up on bail, but it does not appear that the libelants either disputed or agreed to the motions made for like orders in the other above-mentioned suits. Orders were, however, granted, in all the cases, that the vessels and cargoes should be delivered to the claimants, on bond, after appraisal by a single appraiser, designated in the respective orders, who, it seems, took the oath of an appraiser, and assumed the duties of the office, and made return of his valuations in the matters submitted to him, and his report, which was duly placed upon the files of the court. It is to be implied that the respective parties were cognizant of the action of the appraiser in all the suits, and assented to or acquiesced in its result.

The compensation claimed by the appraiser not having been paid to him, his counsel applies to the court to adjust or tax his costs for those services, and order their satisfaction out of the prize products remaining within the jurisdiction of the court. Notice of such application was served by his counsel on the United States attorney, but no appearance in opposition to the motion has been formally made by any party. The court has hesitated to act upon this application, and has required explanations of facts and law to justify interference in these matters judicially, and an award of costs individually to or against any party to these suits, or an imposition of them on the proceeds of the above prizes yet remaining within the authority of the court.

In the first place, no practice in prize actions is pointed out which entitles claimants in prize suits to demand a delivery of prize property on bail to them, or for their benefit, as against government captors, or to inter-

meddle with it at all, except for its preservation when in a perishing condition. These proceedings were not based upon allegations of that character, and do not appear to have been further noticed on the part of the government, than in the refusal of the district attorney to consent to the application of the claimants to bail or appraise the prize property. If, however, the acts of the captors are to be considered as an acquiescence on their part, in the entry of orders by the court to name an appraiser and surrender the prizes to bail on appraisal thereof, yet it is in no way shown to the court that the libelants proceeded affirmatively in the matter, or possessed any interest or authority in or over the appraisements. The entire transaction seems to have been induced and carried to completion at the instance and for the convenience of the claimants solely. The natural result would be, that expenses so created should be defrayed by those alone who incurred them. The court is not aware of any rule in the civil or common law which subjects a suitor in rem to repay expenses made by a respondent in reclaiming from the custody of the law to his own possession property under seizure pendente lite, as to the legal title to such possession. At first impression, most assuredly, the charges of appraising seized property and bonding it fall exclusively upon the party who seeks to force it out of the custody of the law.

No evidence is furnished to the court that any judgment or decree has been pronounced in these suits, imposing costs of any amount upon the libelants carrying on these several actions, or that there has been any recognition, on the part of the United States, of a legal or equitable liability for the services rendered on the occasion in question. There does not appear to have been any previous stipulation in court, or any personal arrangement between the parties, that the compensation claimed by the appraiser shall be allowed for his services out of the arrested effects, if such arrangement could be lawfully made obligatory upon the government.

Feeling the difficulties of acting upon these claims for costs, I sought explanations from the claimant, on the first presentation of the bills for taxation, on the supposition that the claim might be sustainable on some legal or equitable grounds, as to what period of time had been devoted to making the appraisal, and as to the circumstances attendant upon the transaction. Obtaining no clear satisfaction on the subject, and the gross charges, amounting to $2,980, being moved for immediate allowance by the counsel for the appraiser, the court, on the attendance of the counsel for the appraiser, and of the United States attorney, and on their consent thereto, on the 7th of October, 1863, ordered that the bills of the appraiser be referred to the prize commissioners, to ascertain and report whether any, and if so, what, sum or sums should be allowed to him for the services mentioned in the bills and affidavits upon which the motion was made. The commissioners reported November 6th, thereafter, in substance, that the charge rested upon a demand by the appraiser of 1 per cent. on the gross value of the goods appraised, being $2,980, and that in their opinion, the sum should be 50 per cent. less, or $1,490. It appears, from the claim of the appraiser, and the evidence reported by the commissioners to the court, that the basis of the allowance claimed was the skill and experience of the appraiser in the employment, and not at all the time or labor bestowed in the performance of the service. No authority is pointed out to the court, sanctioning the application of so vague and indeterminate a rule of compensation for the common service of appraising merchandise merely for the purpose of bailing it. The notion of some of the witnesses, that the reward for such class of services is "regulated by commercial usage, and that a per diem allowance would not be in accordance with such usage," is clearly a misapprehension of the law governing the proceedings of the judiciary of the United States. The public business continually demands the "skill and experience" of mercantile men, in ascertaining and determining the value of merchantable commodities in the markets of the great importing and exporting ports of the country; and congress, aware of the necessity for the employment of such agencies, has naturally made provision for their use and compensation.

By the act of March 1, 1823 (3 Stat. 735, 736, §§ 16, 17), the president is required to appoint in various ports appraisers qualified for the duty, to appraise merchandise,—in this port, one at an annual salary of $2,000, to transact the class of business performed by Mr. Scott, the appraiser now in question; and, if a merchant appraiser is designated by the court to the duty, he is to be paid at the rate of $5 per day. A subsequent law augments the salary, but makes no change in regard to the compensation to merchant appraisers. 9 Stat. 618, § 5. So, by the standing rules of the district court, appraisers selected for similar duties under its authority receive a reward therefor of $3 per diem. District Court Rules of 1838, rule 67. The compensation is limited to that sum "for each day necessarily employed in making the appraisement." It would thus appear, that the claimant, his counsel, and the prize commissioners were under a grave misapprehension in supposing that the value of the services rendered in this case is to be determined by commercial usage, and that a per diem allowance is not in accordance with such usage; and also in their conclusion that a very large percentage in amount was the legal measure of reward for services of exceedingly vague duration and difficulty.

It appears, by the papers on file, that, in the case of the Sally Magee, the appraiser was sworn into office July 29, 1861, and re-

ported his valuation of the cargo the next day, with $690.40 fees therefor. The oath in the case of the bark Winifred was subscribed July 15th, and the appraisal reported was filed July 19th, with $806.40 fees therefor. The files in the cases of The Forest King [Case No. 4,937] and The Lynchburg [Id. 8,638] do not show when the appraiser was qualified or the time of his report. The fees claimed by him are $600 in the case of the Lynchburg, and $883.20 in the case of the Forest King. The prize commissioners, as before stated, report the value of these services to be, in the aggregate, a moiety of the sum charged, but assign no reason for that diminution of the amount, or why the deduction should not be a greatly larger proportion of the original demand, or upon what principles of quantum meruit the discretion of the court should be induced to adopt $1,490 as a fair and reasonable allowance. No guide, legal or equitable, is indicated in the report of the prize commissioners, which should lead the court to select the sum suggested by them in place of that claimed by the appraiser, nor any that does not as well support the per diem allowance fixed by statute and the rule of court for similar services. The time which the agent is to give to his employment is a cardinal element in estimating the reward to be allowed therefor. Manifestly, congress so regards it in fixing the salaries and per diem compensation to this class of agents. The salaries granted to the chief and assistant appraisers, and to merchant appraisers for occasional acts of appraisement, approximate so closely as to denote that congress intended the scale of reward to be framed upon a common consideration. It would be unreasonable to suppose that the government intended that the man called in to render a single service of a day or two, or even only a few hours' continuance, should be entitled to receive a compensation greatly surpassing what is allowed for the employment of an entire year devoted to the same line of duties, and those generally of surpassing difficulty and importance, inasmuch as the official appraiser is expected to be competently qualified to determine the values of numerous and diversified merchandise, while the merchant appraiser is expected to furnish an opinion upon an article familiar to his experience. In illustration, Mr. Scott, a coffee dealer, is required to pronounce his opinion upon the value of parcels imported in four vessels, and there is no evidence that a week, or half of that time, was expended in fulfilling the duty imposed upon him by the reference. For this service he claims to be paid $2,980, and the prize commissioners report him to be entitled to $1,490, while the law gives but $2,000, or, in the extreme, $2,-500 a year, as compensation to the official appraiser for services embracing the exami-

nation and valuation of all descriptions of merchandise, natural products, and fabrics of art. I cannot contend that the law contemplates such inequalities in its application or construction.

Examining this application upon its particular facts, and also upon general principles, I feel constrained to determine as follows:

1. It is not made to appear to the court that the appraisals of the cargoes of coffee, in these proceedings, were moved for and ordered by the court in the interest of the United States, or that the United States are legally or equitably responsible for the services performed by the applicant, or that the coffee, as prize property, is subject, in kind, to the demand of the applicant.

2. Clearly, the appraisements sought for and ordered in these suits were in the interests of the parties claimants in the suits, and, according to the regular course of practice in admiralty, would be at their charge, they alone being benefited by the delivery of the property to their possession. If anything different from that was understood between the proctors in the cases, that was matter of private arrangement between them personally, and was in no way embraced or contemplated in the orders of the court. The court possesses no authority, in law, to enforce arrangements of that character, in rem, against public property in the custody of the law, or the proceeds of it in the charge of public depositaries.

3. An order in a cause pending in court on the seizure of property by the United States, made in invitum against either party, and by the mutual assent of both, with a view to an appraisement preparatory to bailing the property, imports no right in the appraiser to demand for his services in the matter a quantum meruit compensation, or any further reward than the ordinary per diem allowance provided by statute or by the standing rules of the court for that description of services. A different rate of taxation, if acquiesced in or expressly consented to by the counsel for the respective parties, cannot be enforced by the court.

Having no adequate proof before me that the coffee, or its proceeds, if yet within the jurisdiction of the court, is liable, in law, to the claim under this application, or that the lawful amount of compensation claimed by the applicant is recoverable out of the property or fund referred to in the application, the motion to the court upon the papers must be denied. The application and the papers are, accordingly, left subject to the orders of the applicant.

———

SALLY MAGEE, The (UNITED STATES v.). See Case No. 16,216.